**In re Investigation of Bay INGRAM.**

**No. 12–431.**

United States District Court,
E.D. Louisiana.

April 12, 2012.

Lewis O. Unglesby, Unglesby & Marionneaux, Baton Rouge, LA, David Isaak, Gerger & Clarke, Houston, TX, Lance Covington Unglesby, Unglesby & Marionneaux, Shaun G. Clarke, Gerger & Clarke, New Orleans, LA, for Bay Ingram.

### ORDER AND REASONS

LANCE M. AFRICK, District Judge.

Before the Court is a motion,[1] filed by the United States of America ("the government"), for an order approving its proposed filter team protocol for review of certain evidence, seized pursuant to a search warrant, that may be protected by attorney-client or work product privileges.[2] Bay Ingram ("Ingram"),[3] the target of a federal grand jury investigation in the Eastern District of Louisiana and the purported owner of the two e-mail addresses from which such evidence was seized,[4] op-

---

1. R. Doc. No. 16.

2. Such evidence includes the categories of documents retrieved from bayingram@yahoo.com and jerryaldini11@yahoo.com as set forth in Special Agent Robert W. Blythe's declaration (R. Doc. No. 16, pp. 11–12) attached to the government's motion.

3. The opposition memorandum was also filed on behalf of Southeast Recovery Group, LLC ("Southeast"). For the sake of simplicity, the Court only refers to Ingram throughout this order. The Court recognizes and underscores that arguments asserted on Ingram's behalf were also asserted on behalf of Southeast.

4. Ingram admits that bayingram@yahoo.com is his e-mail account, but explicitly "does not concede that jerryaldini11@yahoo.com is his email account." R. Doc. No. 19, pp. 1–2. Accordingly, the government argues that "Ingram has disclaimed any claim of privilege with respect to these e-mails" and requests that the Court "fashion an order that permits the United States to immediately begin reviewing these e-mails." R. Doc. No. 24, p. 7 n. 1. As set forth in this order, the Court grants the government's motion subject to the condition that it must employ the proposed filter team protocol when reviewing evidence seized from *both* bayingram@yahoo.com and jeryaldini11@yahoo.com.

poses the motion,[5] For the following reasons, the motion is **GRANTED.**

### BACKGROUND

On April 13, 2011, Southeast Recovery Group, LLC ("Southeast"), filed a lawsuit against BP America, Inc. ("BP"), in the U.S. District Court for the Eastern District of Louisiana to recover certain payments that BP allegedly owes Southeast for use of a helicopter, provided to the St. Bernard Parish Sheriff's Office ("Sheriff's Office"), which was used to respond to the aftermath of the 2010 Deepwater Horizon oil spill ("the spill").[6] Southeast is allegedly "owned and/or managed by" Ingram.[7]

In its civil lawsuit, Southeast contends that, following the spill, a BP representative contacted the Sheriff's Office and offered a cash advance against any spill-related expenses that St. Bernard Parish incurred.[8] In response to this offer, the Sheriff's Office indicated that it required helicopter flight services to help with its disaster response.[9] Southeast claims that BP authorized Southeast to provide the requested flight services.[10] Although Southeast submitted invoices from July 1, 2010, to November 16, 2010, for the flight services rendered, Southeast alleges that BP never submitted any payment.[11]

In early 2011, before Southeast filed its complaint, the government became aware of alleged "discrepancies and irregularities" in the invoices submitted to BP and it initiated an investigation of the matter.[12] Because the federal grand jury's investigation involved "the same facts, evidence, witnesses, and circumstances at issue" in the civil lawsuit, the government ultimately moved to intervene and to stay the lawsuit on December 23, 2011.[13] On January 19, 2012, the presiding U.S. Magistrate Judge [14] granted the government's motion and stayed and administratively closed the civil case for ninety days pending completion of the grand jury's investigation.[15]

As a result of this criminal investigation, the grand jury issued subpoenas to Ingram in his official and personal capacities. These subpoenas ordered Ingram to produce several types of documents, including "[c]orrespondence (electronic or written)." [16] Ingram produced some e-mails in response to the subpoenas. However the government doubted that Ingram produced all relevant e-mails.[17] Accordingly,

---

5. R. Doc. Nos. 19 and 27.

6. *Southeast Recovery Group, L.L.C. v. BP America, Inc.*, Civil Action No. 11–823.

7. No. 11–823, R. Doc. No. 53–1, p. 1.

8. No. 11–823, R. Doc. No. 1, ¶ 5.

9. No. 11–823, R. Doc. No. 1, ¶¶ 16–7.

10. No. 11–823, R. Doc. No. 1, ¶ 10.

11. No. 11–823, R. Doc. No. 1, ¶ 16.

12. No. 11–823, R. Doc. No. 53–1, p. 3. BP answered Southeast's complaint on July 13, 2011. In its answer, BP alleged that Southeast "submitted fraudulent invoices to BP for nearly 400 hours of fictitious flight time. Upon information and belief, Southeast's misrepresentations were intentional and made to deceive BP." R. Doc. No. 11, ¶¶ 4–9. BP also asserted counterclaims for fraud, violations of the Louisiana Unfair Trade Practices and Consumer Protection Act and conversion or, in the alternative, that Southeast was obligated to restore payments to BP for services which were not provided but for which Southeast received compensation. R. Doc. No. 11, ¶¶ 10–26.

13. No. 11–823, R. Doc. No. 53–1, p. 1.

14. The parties consented to proceed before the U.S. Magistrate Judge. No. 11–823, R. Doc. No. 68.

15. No. 11–823, R. Doc. Nos. 75 and 76.

16. R. Doc. No. 1–1, p. 14.

17. R. Doc. No. 24, p. 2.

on December 21, 2011, the government obtained a search warrant from U.S. Magistrate Judge Daniel E. Knowles, III.[18] The warrant directed Yahoo! Inc. ("Yahoo"), the third-party provider servicing the accounts bayingram@yahoo.com and jerryaldini11@yahoo.com, to produce certain data from the relevant e-mail accounts.[19]

Yahoo produced the requested evidence on January 6, January 18 and February 2, 2012.[20] Federal Bureau of Investigation ("FBI") Special Agent Robert W. Blythe ("Blythe") received the evidence, which is contained on three "CDs/DVDs."[21] Blythe submitted the disks to the FBI's evidence control room without reviewing it because the government is concerned that the e-mails may contain privileged communications regarding the civil lawsuit and/or criminal investigation.[22] As such, "[i]n an effort not to become exposed to lawfully-obtained evidence which is nevertheless protected by the attorney-client and work product privileges, and to avoid any disqualification of the agents and prosecutors pursuing the criminal investigation ...," the government requests that the Court approve its use of a "filter team" to review such evidence before it is disclosed to the Assistant United States Attorneys ("AUSA") directing Ingram's criminal investigation.[23]

The government's proposed filter team protocol[24] provides that an FBI Special Agent, unaffiliated with the squad assigned to the investigation, will first retrieve all e-mails sent to, or by, or copied to, an attorney or law firm, and all e-mails which refer to an attorney or law firm in the "text" (the "attorney e-mails").[25] The agent will then refer the attorney e-mails to the filter AUSA—an AUSA who has no connection with Ingram's criminal investigation.[26] After the filter AUSA determines which e-mails are subject to the attorney-client or work product privileges ("privileged e-mails") and those which are not ("non-privileged e-mails"), Ingram's attorneys will review the non-privileged e-mails and they will be given the opportunity to challenge the filter AUSA's determination.[27] If the filter AUSA and Ingram's attorneys cannot agree as to whether an e-mail is or is not privileged, the Court shall resolve the dispute.[28]

Once all privilege determinations are final, non-privileged e-mails shall be submit-

**18.** R. Doc. No. 24, p. 1.

**19.** The warrant authorized the seizure of "All email," "Histories," "Buddy lists," "Profiles," "Subscriber information," "Method(s) of payment," and "Detailed billings records (log on and log off times)" covering a two-year period. R. Doc. No. 16, pp. 10–11.

**20.** R. Doc. No. 16, p. 11.

**21.** R. Doc. No. 16, p. 11.

**22.** R. Doc. No. 16, p. 2.

**23.** R. Doc. No. 16, p. 2.

**24.** R. Doc. No. 16, pp. 14–17.

**25.** R. Doc. No. 16, pp. 14–16. The government suggests that the Court consider permitting Ingram's attorneys to propose additional or different search terms that the agent shall use to retrieve the attorney e-mails. As set forth in this order, the Court grants the government's motion subject to the condition that Ingram's attorneys may submit additional search terms, if Ingram chooses to exercise this right, no later than Monday, April 16, 2012, at 5:00 p.m.

**26.** R. Doc. No. 16, p. 16. The government proposes that AUSA Michael McMahon ("McMahon") of the Eastern District of Louisiana serve as the filter AUSA. McMahon is not assigned to the financial crimes unit, the unit pursuing Ingram's criminal investigation. R. Doc. No. 16, p. 3.

**27.** R. Doc. No. 16, p. 16.

**28.** R. Doc. No. 16, p. 16.

ted to the case agent for use in the investigation. Copies of all privileged e-mails shall be sequestered within the filter agent's and filter AUSA's files, while the original e-mails shall be provided to Ingram's attorneys.[29] The government argues that this filter team protocol is consistent with procedures approved by other U.S. District Courts and U.S. Circuit Courts of Appeals.

Ingram opposes the government's proposed filter team protocol, contending that "the 'taint team' procedure impermissibly intrudes on the attorney-client privilege and runs a grave risk that privileged materials will fall into the hands of the attorneys involved in the investigation."[30] In response, Ingram proposes an alternative procedure, modeled on Rule 26(b)(5) of the Federal Rules of Civil Procedure, whereby the original disks containing the e-mails would be deposited with the Court.[31] Ingram's attorneys would receive copies of the e-mails and complete their review within sixty days.[32] For each e-mail withheld as privileged, Ingram's attorneys would provide the government with the e-mail's date and time sent, the sender(s) and recipient(s), the privilege asserted and a description of the email's contents sufficient to identify the basis of the privilege.[33] Ingram's attorneys would produce all non-privileged e-mails to the government; the

government would also have fifteen days to object to any assertions of privilege.[34] The Court would then rule on the government's objections after an *in camera* review of the objected-to e-mails.[35]

## LAW AND ANALYSIS

The Fifth Circuit has never endorsed or disparaged the filter team protocol that the government proposes in this case.[36] Several district courts, including one in the Fifth Circuit, have approved the use of government filter teams. *See, e.g., In re Search of 5444 Westheimer Road Suite 1570, Houston, Texas, on May 4, 2006,* 2006 WL 1881370 (S.D.Tex. July 6, 2006); *see also, United States v. Taylor,* 2010 WL 2924414 (D.Me. July 16, 2010); *United States v. Sutton,* 2009 WL 481411 (M.D.Ga. Feb. 25, 2009); *United States v. Grant,* 2004 WL 1171258 (S.D.N.Y. May 25, 2004).

Ingram counters that the only U.S. Circuit Court of Appeals to have extensively examined the role of filter teams when reviewing privileged documents—the Sixth Circuit in *In re Grand Jury Subpoenas,* 454 F.3d 511 (6th Cir.2006)—has decisively rejected them because they " 'pose a serious risk to the holders of the [attorney-client or work product] privilege.' "[37] The Court finds *In re Grand Jury Subpoenas* distinguishable. *In re Grand Jury Sub-*

---

**29.** R. Doc. No. 16, p. 16. If the case agent locates a "non-attorney e-mail" during the investigation that appears to contain privileged material, such e-mail shall be referred to the filter AUSA and handled in accordance with the same procedure. R. Doc. No. 16, p. 17.

**30.** R. Doc. No. 19, p. 2.

**31.** R. Doc. No. 19, p. 4.

**32.** R. Doc. No. 19, p. 4.

**33.** R. Doc. No. 19, p. 4.

**34.** R. Doc. No. 19, p. 4.

**35.** R. Doc. No. 19, p. 4.

**36.** *U.S. v. Search of Law Office, Residence, and Storage Unit Alan Brown,* 341 F.3d 404 (5th Cir.2003), vacated a district court's order granting a motion for return of documents. Though the facts of *In re Search of Law Office* indicate that the government sought to review the seized documents pursuant to a "taint team" procedure similar to the government's proposed protocol in this case, the Fifth Circuit never addressed the propriety of such procedure. *Id.* at 407.

**37.** R. Doc. No. 19, p. 2 (quoting *In re Grand Jury Subpoenas,* 454 F.3d at 523).

*poenas* involved a grand jury subpoena that had been issued to a corporation which had control of the relevant documents. *Id.* at 522–24. Because the government did not "actually possess the potentially-privileged materials [at issue]," the Sixth Circuit concluded that "the exigency typically underlying the use of taint teams [was] not present." *Id.* at 523. The court highlighted that "taint teams" were appropriate when certain "exigent circumstances" were present, namely when "government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant." *Id.* at 522. "In such cases," the Sixth Circuit opined, "the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *Id.* at 522–523 (citing *United States v. Abbell,* 914 F.Supp. 519 (S.D.Fla.1995)).

First, Ingram failed to produce many of the e-mails that are subject to the grand jury's investigation. Consequently, the e-mails seized from bayingram@yahoo.com and Jerryaldini11@yahoo.com are in the government's possession due to the execution of a lawfully obtained search warrant. Second, the government has demonstrated respect for any potential privilege by seeking the Court's permission before moving forward with its investigation. *See Taylor,* 2010 WL 2924414, at *1. The Court finds that the government's proposed filter team protocol shows proper deference to any attorney-client or work product privileges while allowing the government's investigation to proceed. Third, Ingram's proposed procedure could disrupt the normal functioning of the grand jury as Ingram would have access to records, being reviewed by the grand jury, which he would not normally be entitled to review until after an indictment was returned.

Finally, the Court notes that, as other U.S. District Courts have stated, this decision "is based upon the expectation and presumption that the Government's privilege team and the trial prosecutors will conduct themselves with integrity." *See Taylor,* 2010 WL 2924414, at *1; *In re Search of 5444 Westheimer Road,* 2006 WL 1881370, at *3; *Grant,* 2004 WL 1171258, at *3.

Accordingly,

**IT IS ORDERED** that the motion is **GRANTED** and that the government's proposed filter team protocol is **APPROVED.**

**IT IS FURTHER ORDERED** that Ingram's attorneys shall file under seal suggested additional search terms for retrieving the attorney e-mails no later than **Monday, April 16, 2012, at 5:00 p.m.**

**IT IS FURTHER ORDERED** that AUSA Michael McMahon of the Eastern District of Louisiana shall serve as the filter AUSA to review the attorney e-mails as set forth in the approved filter team protocol.

**IT IS FURTHER ORDERED** that the government shall employ the approved filter team protocol when reviewing all evidence seized from *both* bayingram@yahoo. com and jerryaldini11@yahoo.com.

**IT IS FURTHER ORDERED** that this order be **SEALED.**

**IT IS FURTHER ORDERED** that the Clerk's Office shall serve copies of this order on Lance Unglesby, Shaun Clarke and David Isaak, counsel for Ingram, and Assistant U.S. Attorneys Matthew Chester and Eileen Gleason, counsel for the government.